IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2008

Charles R. Fulbruge III
Clerk

No. 08-40298

NAUTILUS INSURANCE CO

Plaintiff-Appellant

v.

PACIFIC EMPLOYERS INSURANCE CO

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:04-cv-00619

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal presents a dispute between two insurance companies that both insured the same entity. Plaintiff-Appellant Nautilus Insurance Company ("Nautilus") seeks reimbursement from a co-primary insurer, Defendant-Appellee Pacific Employers Insurance Company ("Pacific"), for a portion of the funds Nautilus paid to settle the insured's claims. In so doing, Nautilus pursues an argument under Texas law that the Texas Supreme Court explicitly rejected

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

just last year.  See Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765 (Tex. 2007).  Accordingly, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2000, the insured in the underlying case, EOG Resources, Inc. ("EOG"), entered into several contracts as part of its oilfield operations.  Of relevance to this appeal, EOG contracted with J.R. Nichols, L.L.C. ("Nichols") to determine the owners of the surface and mineral estates of properties within a sixty-five square mile area near Galveston, Texas, and to survey the land.  Nautilus insured Nichols and listed EOG as an additional insured under the policy.  EOG also contracted with Veritas DGC Land, Inc. ("Veritas") to perform seismic dynamite blasting.  Pacific insured Veritas and also listed EOG as an additional insured under Veritas's policy.  Both the Nautilus policy and the Pacific policy were primary insurance policies, and both contained identical pro rata (or "other insurance") provisions.  The pro rata clauses required the insurers to pay a pro rata portion of any judgment or settlement if the coverages overlapped with other primary insurance policies.[1]

---

[1]  The pro rata clauses provide,

4.      Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

      a.      Primary Insurance

This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

    . . . .

      c.      Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

As a result of the seismic surveying and blasting, several homeowners sued EOG and some of its contractors, alleging that the seismic activity caused foundation defects in their homes. EOG filed a claim against its own insurance company, as well as against Nautilus and Pacific. As the cases proceeded toward trial, Nautilus and the other insurance companies involved (besides Pacific) decided to settle some of the lawsuits for $3.5 million. Nautulis voluntarily paid $1.5 million of this settlement, which it asserts was a sum that included the portion Pacific should have paid to satisfy its obligations to EOG. Pacific refused to agree to the settlement and proceeded to trial. A jury ruled against thirty of the homeowners' claims, and the court granted summary judgment on the remaining homeowners' claims.[2] Thus, Pacific did not contribute to the settlement and did not pay anything in the underlying state court cases, while Nautilus claims that it paid more than its proportionate share of the settlement.

Nautilus, along with EOG, brought suit against Pacific in state court. Nautilus sought to enforce the subrogation clause in its insurance policy against Pacific. That clause granted Nautilus the right of subrogation against third parties upon Nautilus's payment of claims.[3] That is, Nautilus contends that it

---

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ration of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

[2] The Texas Courts of Appeals upheld these judgments. See Adair v. Veritas DGC Land, Inc., No. 14-06-00254-CV, 2007 WL 2790362 (Tex. App.—Houston [14th Dist.] Sept. 27, 2007, pet. denied); Barnett v. Veritas DGC Land Inc., No. 14-05-01074-CV, 2006 WL 2827379 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, pet. denied). Nautilus argues that these cases did not "exonerate" EOG, and it is true that Veritas, one of EOG's subcontractors, was the only defendant in these trials, meaning that the judgments did not explicitly impact EOG's liability. This distinction is irrelevant to the present dispute, however, because the fact remains that Pacific did not have to pay the homeowners anything for their claims.

[3] That clause provides,

8. Transfer of Rights of Recovery Against Others to Us

If the insured has rights to recover all or part of any payment we have made

3

became contractually and equitably subrogated to the rights of EOG to seek compensation for the amounts Nautilus paid on behalf of EOG that Pacific should have paid instead. Pacific removed the case to the district court based on diversity jurisdiction.

The district court stayed the action until the Texas Supreme Court rendered its decision in Mid-Continent. Thereafter, the district court granted summary judgment in favor of Pacific. The court then granted the parties' Joint Motion to Dismiss Without Prejudice EOG's claims against Pacific, so that the summary judgment order would be a final judgment. Nautilus appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 1291, as the district court entered a final judgment granting summary judgment to Pacific. The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332.

This court reviews de novo a district court's summary judgment order. Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). We will affirm the district court's decision to grant summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Richardson, 434 F.3d at 332. In resolving a question of state law in a diversity case, a federal court must follow the substantive decisions of the state's highest court, here the Texas Supreme Court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Tex. Indus. v. Factory Mut. Ins. Co., 486 F.3d 844, 846 (5th Cir. 2007).

## III. DISCUSSION

The sole question in this appeal is whether the district court properly applied Mid-Continent Insurance Co. v. Liberty Mutual Insurance Co., 236

---

under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

S.W.3d 765 (Tex. 2007). We therefore recount in detail the Texas Supreme Court's analysis in that case.

Mid-Continent involved claims stemming from a car accident. Id. at 768. James Boutin ("Boutin") and his family hit an oncoming car in a Texas highway project construction zone. Id. Kinsel Industries ("Kinsel") was the general contractor on the highway project, and it was the named insured under a policy from Liberty Mutual Insurance Company ("Liberty Mutual"). Id. at 769. Crabtree Barricades ("Crabtree") was a subcontractor of Kinsel and was responsible for the signs and dividers. Id. Mid-Continent Insurance Company ("Mid-Continent") insured Crabtree and identified Kinsel as an additional insured for liability arising from Crabtree's work. Id. Thus, Kinsel had primary insurance from both Liberty Mutual and Mid-Continent. Id. The Boutin family sued, among others, Kinsel and Crabtree for damages resulting from the accident. Id. Both insurance policies provided Kinsel with $1 million in indemnity coverage for the Boutin's suit. Id. Liberty Mutual also provided Kinsel with excess insurance coverage of $10 million. Id.

The Liberty Mutual and Mid-Continent policies both contained "other insurance" clauses that are identical to the clauses at issue in this case. See id. Because both policies were primary policies, they each assumed responsibility for a pro rata share of Kinsel's liability. Id. Initially, both insurance companies assessed Kinsel's percentage of fault at between ten and fifteen percent. Id. at 770. However, Liberty Mutual eventually increased its estimate of Kinsel's fault to sixty percent. Id. Liberty Mutual and the Boutins then entered into settlement negotiations. Id. Liberty Mutual agreed to settle the case for $1.5 million—or sixty percent of a $2.5 million anticipated verdict—and demanded that Mid-Continent contribute its one-half share, or $750,000. Id. Mid-Continent, however, had calculated the settlement value of the case against Kinsel at only $300,000 and agreed to contribute only one-half of that amount,

5

or $150,000. Liberty Mutual thus paid the remaining $1.35 million, which was $350,000 over its primary insurance policy limit. Id.

Liberty Mutual sued Mid-Continent in Texas state court seeking to recover Mid-Continent's pro rata share of the settlement with Kinsel. Id. Mid-Continent removed the case to the district court, which held in favor of Liberty Mutual. Id. The district court ruled that Liberty Mutual was entitled to recover from Mid-Continent on behalf of Kinsel based on the subrogation clause in Liberty Mutual's policy. Id. The court concluded that Liberty Mutual had acted reasonably in assessing the percentage of fault attributable to Kinsel, that Mid-Continent had acted unreasonably, and that Liberty Mutual could enforce, on behalf of Kinsel, Mid-Continent's duty to act reasonably in settling the case. Id. Mid-Continent appealed to this court, and we certified the questions at issue to the Texas Supreme Court. Liberty Mut. Ins. Co. v. Mid-Continent Ins. Co., 405 F.3d 296, 297 (5th Cir. 2005).

The Texas Supreme Court accepted the certified questions and answered them by concluding that Liberty Mutual did not have a right of subrogation, because Kinsel did not have any remaining rights against Mid-Continent. Mid-Continent, 236 S.W.3d at 771, 772. The court first recounted two precedents to guide its analysis. In Employers Casualty Co. v. Transport Insurance Co., 444 S.W.2d 606, 610 (Tex. 1969), the court noted that a contractual or equitable right of subrogation is the proper remedy for a co-insurer to seek reimbursement from an insurer who does not contribute to a settlement. In Traders & General Insurance Co. v. Hicks Rubber Co., 169 S.W.2d 142, 148 (Tex. 1943), the court stated that a co-insurer does not have a right to contribution from other insurers, "nor will the payment of the whole loss by any of them discharge the liability of the others." The court in Mid-Continent noted that this language implies that when one co-insurer pays a loss, the insured still has a right to enforce a contractual obligation against the insurer who does not pay, and that

6

the co-insurer seeking reimbursement can be subrogated to this right. 236 S.W.3d at 774. As the court explained, "in [either contractual or equitable subrogation], the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party." Id.

The court next turned to Kinsel's potential rights against Mid-Continent. Id. Although Liberty Mutual asserted that it was subrogated to Kinsel's rights to enforce Mid-Continent's duty to defend and indemnify Kinsel and to pay a pro rata share of the settlement, the court concluded that "Kinsel has no right, after being fully indemnified, to enforce Mid-Continent's duty to pay its pro rata share of a loss." Id. at 775. The court noted that an insured's right to indemnity is limited to the actual amount of the loss and that a pro rata clause eliminates the potential for double recovery. Id. Once the insured becomes fully indemnified, however, it no longer has any rights against its insurer.[4] Id. The court therefore held that "a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation." Id. at 775-76. Thus, although an insurer might have a right of subrogation under its policy, that is "distinct from the ability to recover under that right." Id. at 774.[5] Having received an answer to its certified question, this

---

[4] In fact, the only duty Mid-Continent could have in this context was its Stowers duty to accept a reasonable settlement offer within its policy limits or be liable for any excess judgment against its insured. See G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved). However, the Boutins did not make a settlement offer to Kinsel within Mid-Continent's policy limits, meaning that Stowers did not apply. See Mid-Continent, 236 S.W.3d at 776 (citing Stowers, 15 S.W.2d at 547).

[5] Justice Willett concurred, simply to point out that the specific facts are important in each insurance case. Id. at 777 (Willett, J., concurring). He determined that the facts there required a conclusion that Liberty Mutual was not entitled to recover from Mid-Continent, particularly because the insured received a full recovery. Id. As he noted, "where, as here, the insured is protected throughout the litigation process, insurers are entitled to exercise their

7

court ruled that Liberty Mutual was not entitled to any recovery from Mid-Continent. Liberty Mut. Ins. Co. v. Mid-Continent Ins. Co., 508 F.3d 261, 263 (5th Cir. 2007).

Here, the settlement of the cases fully indemnified EOG for those claims. Under a plain reading of Mid-Continent, therefore, EOG has no rights to enforce against Pacific, meaning that Nautilus cannot stand in EOG's shoes and recover from Pacific. Nautilus's main argument in attempting to distinguish Mid-Continent is that the decision was narrow and applies only when an insurer settles a case to "protect its own coffers," which Nautilus asserts is missing here. Nautilus points out that in Mid-Continent, Liberty Mutual covered Kinsel for $1 million under its primary policy and also provided an excess policy of $10 million. See Mid-Continent, 236 S.W.3d at 769. Under those circumstances, according to Nautilus, Liberty Mutual had a self-serving motive to settle the entire case because it did not want to risk liability for a large judgment under its excess policy. Thus, Nautilus claims that the import of Mid-Continent is that an insurer cannot recover from a co-insurer based upon a right of subrogation when the insurer pays a claim to protect its own financial interests. By contrast, Nautilus asserts that it paid EOG's entire claim solely based on its duty to indemnify its insured.

The language in Mid-Continent, however, belies Nautilus's argument. Toward the beginning of the opinion, the court noted that Liberty Mutual's excess coverage did not impact its decision:

> At trial the parties disputed how many policies should be considered in apportioning the cost of the settlement, as Liberty Mutual also held a business auto policy and excess policy in favor of Kinsel. Because the Fifth Circuit's certified questions presume the loss triggered only Mid-Continent's and Liberty Mutual's [primary] policies, our answers consider only these two policies.

---

business judgment in deciding whether to settle a claim and for how much." Id.

Id. at 770 n.4 (citation omitted). Nautilus points to language toward the end of the opinion where the court suggested that Liberty Mutual's motive in paying the entire settlement was to prevent additional liability under its excess insurance policy. See id. at 776 ("Liberty Mutual played a dual role as primary insurer and excess insurer and was in a position to negotiate a good faith settlement in Kinsel's behalf. . . . A reasonable primary insurer, which did not improperly handle the claim, would not pay more than its primary policy limits. In paying $350,000 more than its $1 million policy limits, Liberty Mutual seems to have been motivated by a concern for its excess insurance policy."). As Pacific notes, however, Nautilus also may have been concerned about additional liability under its coverage; its policy limit was $2 million and it settled the claim against EOG by contributing $1.5 million to the $3.5 million settlement, potentially saving itself at least $500,000. Moreover, the language about Liberty Mutual also having an excess insurance policy merely served the purpose of distinguishing American Centennial Insurance Co. v. Canal Insurance Co., 843 S.W.2d 480, 483 (Tex. 1992), where the court recognized equitable subrogation for an excess insurer, "acting solely as such, when a potential judgment approaches the primary insurer's policy limits." Mid-Continent, 236 S.W.3d at 776. However, Nautilus is not an excess insurer, and the fact that Liberty Mutual was both a primary and an excess insurer had no bearing on the court's ultimate decision.

Nautilus also points to several policy implications stemming from a ruling that it has no right of subrogation. It asserts that an insurer will be less likely to settle a suit if it cannot recover the money it pays to settle a case. Nautilus further claims that a broad reading of Mid-Continent will lead to the elimination of the right of subrogation, which Nautilus contends the Texas Supreme Court could not have meant without more explicit language. Finally, Nautilus

suggests that eliminating the right of subrogation will lead to an unfair distribution of losses among insurers.

The Texas Supreme Court, however, is the final arbiter of Texas law. See, e.g., Martin v. Thomas, 973 F.2d 449, 456 n.6 (5th Cir. 1992). Even if the court's decision in Mid-Continent will have these policy effects, that is within the province of the Texas Supreme Court to decide. Additionally, Mid-Continent is unlikely to have the drastic consequences that Nautilus predicts. For example, as discussed above, the court in Mid-Continent explicitly recognized when subrogation is appropriate, i.e., when an excess insurer (acting solely as such) pays a claim near the primary insurance policy limits and then seeks to recover from a primary insurer for the primary insurer's failure to pay. Id. Further, other policy factors are present in this situation: Pacific went to trial and won, so it would seem inequitable to force Pacific to contribute to the settlement when it chose not to settle and prevailed. That is, Pacific bore the risk that it could be liable for more than it would pay in a settlement. Cf. id. at 778 (Willett, J., concurring) ("I would not recognize that one [insurer] owed a duty to protect the business interests of the other. I would treat their negotiations inter se in this case as a matter best left to the business world."). The point is that these policy decisions are within the discretion of the Texas Supreme Court, and in Mid-Continent it ruled against the insurer that voluntarily paid more than its pro rata share of the settlement.

In sum, the Texas Supreme Court's language in Mid-Continent, which involved the exact same issue, was perfectly clear: "Kinsel has no right, after being fully indemnified, to enforce Mid-Continent's duty to pay its pro rata share of a loss." Id. at 775 (majority opinion). Nautilus's manner of distinguishing the case, relying on the fact that Liberty Mutual also provided excess insurance, is unavailing, particularly because the court itself discounted this fact. See id. at 770 n.4. Accordingly, the district court did not err in ruling that the Texas

Supreme Court's decision in Mid-Continent precluded Nautilus from asserting any rights against Pacific.

## IV.  CONCLUSION

The Texas Supreme Court was not ambiguous in  Mid-Continent, and the holding in that case applies with equal force here.  Given that EOG was fully indemnified, it has no rights to enforce against Pacific, and thus Nautilus has no right of subrogation against Pacific.  Accordingly, we AFFIRM the district court's decision granting summary judgment to Pacific.

AFFIRMED.