STONEWALL INSURANCE COMPANY and Seaton Insurance Company, Plaintiffs

v.

TRAVELERS CASUALTY AND SURETY COMPANY f/k/a The Aetna Casualty and Surety Company, Certain London Market Companies, Certain Underwriters at Lloyd's London and Mutual Marine Office, Inc., Defendants.

Civil Action No. 06–11506–EFH.

United States District Court, D. Massachusetts.

Jan. 4, 2010.

---

Michael S. Batson, Matthew C. Kalin, Hermes, Netburn, O'Connor & Spearing, Boston, MA, for Plaintiffs.

Elizabeth L. Marvin, Elizabeth T. Sheldon, Baach Robinson & Lewis, PLLC, James E. Rocap, III, Steptoe & Johnson, LLP, Hillary C. Jarvis, Steptoe & Johnson, LLP, Washington, DC, Michael J. Mazurczak, Robert P. Powers, Melick, Porter & Shea, LLP, John T. Harding, Morrison Mahoney LLP, Boston, MA, Kathleen D. Monnes, Joseph K. Scully, Day Pitney LLP, Hartford, CT, for Defendants.

Kevin J. O'Connor, Hermes, Netburn, O'Connor & Spearing, Boston, MA, for Plaintiffs/Defendants.

### *MEMORANDUM AND ORDER*

HARRINGTON, Senior District Judge.

*Background*

The court held a five-day bench trial on Count I of the plaintiffs' third amended complaint between November 17, 2009 and November 24, 2009. Count I is a claim for equitable contribution; it alleges that all of the defendants are obligated to pay to the plaintiffs an equitable share of the defense and indemnity payments made by the plaintiffs on behalf of Jacksonville Shipyards, Inc. from July 1, 2005 onward.[1]

---

1. At trial, the plaintiffs stated that they seek damages only for defense payments, and not for indemnity payments. Therefore, the court

The plaintiffs and defendants insured Jacksonville Shipyards, Inc. through various policies, and the defense costs at issue relate to silicosis litigation. The plaintiffs in this suit are the Stonewall Insurance Company and the Seaton Insurance Company (collectively "S & S"). The defendants are: the Travelers Casualty and Surety Company; certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively the "London Insurers"); and Mutual Marine Office, Inc. S & S reached a settlement agreement with Travelers and Mutual Marine as to Count I before the trial. Therefore, both Travelers and Mutual Marine were not parties to the trial, and the only defendants at trial were the London Insurers.

*Analysis*

■ The court employs Massachusetts' choice-of-law doctrine in ruling on this matter because Massachusetts is the forum state. *Reicher v. Berkshire Life Ins. Co. of Am.*, 360 F.3d 1, 5 (1st Cir.2004). Under Massachusetts' choice-of-law doctrine, the appropriate jurisdiction here is Texas and Texas law on equitable contribution therefore applies. Massachusetts utilizes "a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." *Bushkin Assocs. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662, 668 (1985). Determining which jurisdiction's laws should control is not a technical analysis according to Massachusetts' choice-of-law doctrine; instead, the court takes a broader view, and considers the interests and facts relevant to the particular matter before the court. *See id.*

Texas law applies here for three reasons. First, the claims arise from products manufactured by the Key Houston company, a Texas-based division of Jacksonville Shipyards, Inc. Second, the majority of the claims for which S & S paid defense costs are from Texas. Third, most importantly, Texas law firms generated the overwhelming majority of the defense costs. S & S paid about $2,000,000 of the $2,800,000 in defense costs at issue to law firms based in Texas.[2]

■ Texas provides for equitable contribution. Under Texas law, where one insurance company paid in full for losses that are also covered by another insurance company, the paying insurance company can obtain contribution from the non-paying insurance company. *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 772 (Tex.2007). Texas recognizes equitable contribution to assure that an insurer sharing a "common obligation or burden" with other insurers only pay its fair share of the costs associated with a claim. *Id.*

■ The London Insurers must contribute to the defense costs incurred by S & S from July 1, 2005 onward in connection with the Jacksonville Shipyards claims. The great majority of the complaints for which S & S paid defense costs were sham and fraudulent claims. Before S & S assumed supervision of the defense, the defense costs were grossly excessive and unreasonable. The London Insurers do not contest these two factors; they agree that most of the underlying silicosis litigation

rules only on the defense payments and does not consider any indemnity charges.

2. S & S paid the remaining $800,000 in defense costs to six law firms, each of which is based in a different state. The six states are Florida, Louisiana, Ohio, Oklahoma, South

Carolina and Tennessee. Even though the London Insurers argue that Florida is the jurisdiction with the most significant interest in this case, the Florida-based firm only accounts for approximately $83,794 in defense costs.

lacked merit and they also agree that the defense costs had reached exorbitant levels. All of the insurance companies, including S & S and the London Insurers, further were of one mind that the insurance companies should seek to decrease both the litigation and the defense costs. In fact, between July 1, 2004 and June 30, 2005, the insurance companies attempted to coordinate a new strategy for dividing the indemnity and defense costs among themselves (the "Mediation Period").

The insurers, however, could not agree on how best to reduce and allocate the defense costs, although they all recognized the exorbitant state of the costs. This impasse prompted S & S to exercise leadership and supervise the defense costs on their own; starting on July 1, 2005, S & S took sole control of the defense of the silicosis litigation on behalf of all of the insurance companies. The London Insurers objected to S & S's actions; they refused to cooperate with S & S and, despite their obligation as insurers of Jacksonville Shipyards, Inc., disclaimed any responsibility for defense costs paid by S & S after July 1, 2005.

S & S have conducted their supervision of the silicosis defense in a highly professional manner and they have achieved exceptional results. For example, Brian Bendig, who oversaw S & S's payment of the defense costs, testified that from approximately July 1, 2005 onward, the defense costs amount to roughly $3,000,000. In contrast, before S & S directed the defense, between approximately January 1, 2004 and July 1, 2005, the defense costs totaled roughly $5,500,000. (Trial Tr. 33, Nov. 18, 2009) S & S dramatically reduced the defense costs and the London Insurers

do not dispute this favorable outcome. As the London Insurers provided coverage to Jacksonville Shipyards, Inc., the London Insurers, as well as the other insurance companies, benefit substantially from S & S's successful management of the defense costs.

In sum, given that the London Insurers do not contest, first, that the defense costs were extreme and unreasonable before S & S assumed control and that action was necessary to remedy this situation, and, second, that S & S have successfully managed the defense to benefit all of the insurance companies, the London Insurers must contribute to the defense costs.

*Decision*

The court finds that the London Insurers must pay S & S, as a matter of equitable contribution, 30 percent of the $2,800,000 in defense costs paid by S & S.[3] This finding is based on the percentage S & S identified in their interrogatory responses as the amount the London Insurers owe to S & S. (Trial Tr. 91, Nov. 24, 2009) Two factors are particularly relevant to the fairness of the court's findings. First, S & S now seek for the court to find that the London Insurers must pay 100 percent, or in the alternative, 77 percent, of the defense costs incurred by S & S since July 1, 2005. Second, although the London Insurers' rate of contribution during the Mediation Period varied, the court finds that the London Insurers always voluntarily contributed 40 percent or greater of the total defense costs.

The concept of fairness is the source and great end of equity jurisprudence. Equitable contribution assures that insurance companies pay only their proper share of a

---

**3.** The court finds that the London Insurers are not entitled to a set-off here. The London Insurers have not proven that S & S had an obligation as excess insurers to contribute to

Jacksonville defense costs paid between November 2003 and June 2004, and S & S therefore have no obligation to pay any of the costs for this period.

given claim. The London Insurers have not paid their proper share of the Jacksonville defense costs and they have no doubt benefitted from S & S's cost-effective supervision of the defense costs.

The court enters judgment for the plaintiffs, the Stonewall Insurance Company and the Seaton Insurance Company, against the defendants, the London Insurers, plus interest and costs.

SO ORDERED.