WESTCHESTER FIRE INSURANCE
COMPANY, Appellant,

v.

AMERICAN CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, Appellee.

No. 01–97–00593–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 2, 1999.

Larry R. Veselka, Gregory Philip Sapire, Houston, Robert A. Chaney, Chicago, IL, for Appellant.

Giorgio Caflisch, Houston, James W. Bradford, Jr., Angleton, J. "Buster"

Brown, Lake Jackson, Cynthia Hollingsworth, Dallas, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and ANDELL.

## OPINION

ERIC ANDELL, Justice.

We are asked to decide whether an excess insurer is entitled to equitable subrogation against a primary insurer for breach of its *Stowers* duty,[1] when the initial settlement demand *exceeded* the limits of the primary policy. The trial court rendered summary judgment for defendant/appellee, American Contractors Insurance Company Risk Retention Group. We affirm.

## Facts

American was the primary insurance carrier for Phillips 66, with a policy limit of $250,000. Westchester Fire Insurance Company was a third-level excess insurance carrier liable for any amounts over $2 million, up to $4 million. The underlying lawsuit was brought against Phillips 66 by William Cooper, a U.S. Contractors employee assigned to work at a Phillips refinery in Brazoria county. A piece of pipe Cooper was handling unexpectedly jumped forward and smashed his hand, breaking one of his fingers and injuring two others. As a result of the injury, Cooper suffers from a progressive, permanent, and incurable syndrome known as reflex sympathetic dystrophy. This condition limits Cooper's range of motion in his hand, arm, and shoulder, and causes him continuous, excruciating pain. His ability to work or to engage in leisure activities is severely impaired. Cooper underwent surgery to implant a spinal cord stimulator intended to help control his pain. Cooper and his wife sued Phillips 66 for negligence, seeking actual and exemplary damages.

American hired Roger McCleary to defend Phillips 66 in the underlying suit, and describes the litigation as "hotly contested." Despite McCleary's essentially unfavorable assessment of the case, American believed it could prevail at trial by proving (1) U.S. Contractors, not Phillips 66, directed Cooper's work, thus Phillips 66 could not be held responsible, and (2) Cooper's contributory negligence exceeded 50%. Neither settlement negotiations nor mediation were successful. In September 1995, after a jury rendered a verdict for Cooper for $5,102,743 (plus roughly $2.5 million in prejudgment interest), the insurance companies settled with the Coopers for $4,300,000, of which Westchester paid $1,300,000. Westchester sought equitable subrogation from American for its portion of the settlement. The trial court rendered summary judgment for American and this appeal ensued.

## *Stowers* Duty

 An insurance company has a duty to accept reasonable settlement offers. *Insurance Corp. of America v. Webster,* 906 S.W.2d 77, 79 (Tex.App.—Houston [1st Dist.] 1995, writ denied). A *Stowers* duty is triggered by a settlement demand when: (1) the claim against the insured is within the scope of coverage; (2) the demand is within the policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 41 (Tex.1998). A demand above policy limits, even though reasonable, does not trigger the *Stowers* duty to settle. *Id.*

Although the parties disagree about the nature of the settlement negotiations, we take as true Westchester's evidence and the inferences from that evidence. *See*

---

1. *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved).

*Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995) (in reviewing summary judgment, we indulge every reasonable inference in favor of nonmovant and resolve any doubts in its favor). Viewed in that light, the evidence shows the following:

(1) McCleary estimated Cooper's chance of obtaining a jury finding of negligence against Phillips 66 to be as high as 50% and estimated that an award of damages would most likely range from $990,200 to $1,905,600.

(2) In July 1994, Cooper made an initial offer to settle for $1.8 million. In a memo to file, Cooper's attorney indicated he believed Cooper would consider an offer as low as $750,000.

(3) McCleary obtained permission to respond with a "nuisance value" offer before mediation, to obtain a "reasonable" opening offer at the mediation; in February 1995, American offered the Coopers $5,000 to settle.

(4) At the mediation conference, the Coopers repeated their $1.8 million demand and American repeated the $5,000 counteroffer. In affidavits, the Coopers and their attorney testified American said it would never increase that offer, and the mediation ended abruptly. They also testified they never had an opportunity to respond with a lower demand.

Westchester accuses American of mishandling of the negotiations, and argues it never intended to settle or even to negotiate in good faith. This, too, we accept as true. American denies the accusation, as well as disputing whether the $5,000 offer was described as "final," but argues that, ultimately, none of this matters. For whatever reason, the Coopers' only offer was for $1,800,000—a sum well in excess of American's policy limit of $250,000.

### Analysis

The *Stowers* doctrine shifts the risk of an excess judgment from the insured to the insurer. *See Insurance Corp.,* 906 S.W.2d at 80. The right of equitable subrogation also shifts the risk from the excess carrier to the primary carrier, but only when the demand is within policy limits. *See American Centennial Ins. Co. v. Canal Ins. Co.* 843 S.W.2d 480, 481 (Tex.1992). Westchester argues that, when an insured has multiple layers of excess insurance, the primary insurer should not be permitted to engage in misconduct in settlement negotiations and urges us to apply the *Stowers* doctrine to such misconduct. It bases its argument on what appears to be an invitation from the supreme court to examine the duty anew, in *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842 (Tex.1994). There, after setting out the three-part *Stowers* test, the court noted, "Nor do we address the Stowers duty when a settlement requires funding from multiple insurers and no single insurer can fund the settlement within the limits that apply under its particular policy." *Id.* at 849, n. 13. Nothing in *American Physicians,* however, addresses whether affirmative misconduct should trigger the *Stowers* duty, and we decline to recognize such an exception. The opening demand of $1.8 million, although consonant with McCleary's estimate of the case's value and apparently reasonable, was not within American's policy limits. Accordingly, the *Stowers* duty was not triggered.

We overrule the point of error. Therefore, we need not address American's cross-point on venue.

We affirm the trial court's judgment.