**AFTCO ENTERPRISES, INC. and ETSI, Inc., Appellants,**

v.

**ACCEPTANCE INDEMNITY INSURANCE COMPANY and Southern County Mutual Insurance Company, Appellees.**

No. 01–09–00280–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 13, 2010.

Sarah Grace Getman, Sidney Daniel Meeks, Wheat, Oppermann & Meeks, P.C., Houston, TX, for Appellants.

Raymond A. Neuer, Richard A. Sheehy, Sheehy, Serpe & Ware, P.C., Reagan M. Brown, Fulbright & Jaworski L.L.P., Houston, TX, for Appellees.

Panel consists of Justices JENNINGS, HANKS, and BLAND.

## OPINION

JANE BLAND, Justice.

AFTCO Enterprises, Inc. (AFTCO) and ETSI, Inc. brought *Stowers* actions against their insurers, Acceptance Indemnity Insurance Company (Acceptance) and Southern County Mutual Insurance Company (Southern), complaining that Acceptance and Southern each failed to timely tender its policy limits in response to a $2.6 million global offer to settle four personal injury lawsuits then pending in Louisiana state court that arose out of a highway accident. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544, 547 (Tex. Comm'n App.1929, holding approved). Though their carriers ultimately tendered their respective policy limits to satisfy the underlying liability claims, AFTCO and ETSI seek unspecified attorney's fees and compensation for damage to their business reputations for the carriers' delay in settling the case. AFTCO and ETSI appeal the trial court's grant of the insurers' summary judgment motions. They contend that the trial court erred in concluding the settlement offer, as a matter of law, did not trigger a *Stowers* duty for either insurer. Finding no error, we affirm.

## Background

This insurance dispute arose out of a 2003 accident, in which an eighteen-wheel tractor-trailer rig collided with several passenger vehicles stopped at a highway intersection in Lafayette, Louisiana. As a result of the collision, two people died and nine were injured. At the time of the collision, the rig's driver was working for ETSI under a contract between it and counterparties V.C. Enterprises, Inc. and Francisco Gonzales, the tractor owners. Performance Rental, I.C., had rented the trailer to AFTCO. The following insurance policies were in effect when the accident occurred:

- a primary policy issued by Home State Insurance Company (Home State) with remaining limits of $600,000,[1] which named AFTCO as the insured and ETSI as an additional insured;

- a $1 million primary policy issued by Southern, which named Performance as the insured and AFTCO, ETSI, and the rig driver as additional insureds;

- a $1 million excess policy issued by Acceptance, which named AFTCO as the insured and ETSI as an additional insured, and

---

1. Home State had already paid out $400,000 of the $1 million coverage available in the settlement of other claims arising out of the accident.

• a $10 million excess policy issued by Harco National Insurance Company (Harco), which does not exclude coverage for exemplary damages.

### Louisiana state court proceedings

The personal injury lawsuits stemming from the collision and the corresponding insurance and coverage disputes proceeded together in Louisiana state court. Harco maintained that its excess policy provided no coverage for losses arising out of the accident, while the personal injury plaintiffs and AFTCO and ETSI maintained that Harco owed coverage. In June 2006, the remaining personal injury plaintiffs sent a letter to all of the insurance companies, except Harco, in which they offered to settle their claims against V.C. Enterprises, Gonzalez, the driver, AFTCO, Home State, Southern, and Acceptance, as well as any uninsured claims against those defendants, "in exchange for a tender of the policy limits available under the insurance policies issued by [Home State, Acceptance, and Southern]." Their offer also stated, "We understand the insurance policies issued by Home State, Acceptance, and Southern, at this time provide insurance coverage of $2,687,433.70 for the claims of the remaining plaintiffs." The plaintiffs reserved their rights to proceed against Harco.

Southern did not respond to the plaintiffs' letter. Acceptance responded in a letter to plaintiffs' counsel that it had "no obligation to consider payment of a demand under its policy, assuming coverage would exist, unless and until the liability limits of all underlying policies are exhausted."

In November 2006, the Louisiana Supreme Court ruled on the Harco coverage dispute, holding that whether the Harco policy provided coverage depended on resolution of a fact issue. The plaintiffs then sent another letter to the insurers, this time including Harco, in which they made "formal demand for the limits of all insurance policies (i.e., $13 million minus amounts already paid out in this matter)" in exchange for their release of all claims, including excess claims, against all of the defendants.

In response, Acceptance stated its willingness to mediate the litigation, conditioned on the participation of the other three insurance companies. By the end of April 2007, mediation still had not occurred, but Southern had unilaterally formally tendered its policy limits to settle the case. Within several days of that settlement proposal, Acceptance tendered its policy limits, reserving its right to seek contribution against Harco, which still refused to provide coverage.

As a result of Harco's continued refusal to settle, the personal injury claims went to trial, which resulted in a jury verdict and judgment in excess of $20 million. The August 2007 judgment also declared that the Harco policy provided coverage for the claims. After the entry of that judgment, the insurers settled all of the outstanding claims for the available policy limits, thus resolving AFTCO and ETSI's liability in the underlying case.

### Trial court proceedings

AFTCO and ETSI instituted this suit in Texas state court, claiming, among other things, that the insurers negligently violated their *Stowers* duty to accept reasonable settlement offers within policy limits, which caused AFTCO and ETSI to incur additional attorney's fees and expenses that they would not have incurred but for the insurers' alleged negligence. Acceptance moved for summary judgment on the grounds that (1) there is no evidence that the underlying events ever triggered its *Stowers* duty; (2) as a matter of law, it had a reasonable, good faith basis for refusing

to pay the plaintiffs' settlement demands; and (3) its conduct did not cause any damages to AFTCO or ETSI as a matter of law because it tendered the policy limits before the personal injury claims went to trial. The trial court's order specifies that it granted summary judgment solely on the no-evidence ground urged by Acceptance—that there was no evidence that any *Stowers* obligations were ever triggered.

Southern also moved for summary judgment on traditional and no-evidence grounds, both of which stemmed from the absence of any circumstance triggering its *Stowers* duty. At the hearing on Southern's motion, AFTCO, ETSI, and Acceptance all agreed that the trial court should decide the summary judgment motion "on the issue of whether a joint settlement demand that is made above the limits of Southern['s] insurance policy, but within the combined limits of separate insurance policies that provided coverage for underlying claims, makes [Southern] subject to a *Stowers* claim." The trial court determined that Southern "is not subject to a *Stowers* claim on the facts of this case," and, based on that determination, granted a take-nothing summary judgment. AFTCO and ETSI appeal these rulings.

## Discussion

### Standard of review

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). Both of the summary judgment orders challenged in this appeal specify the no-evidence grounds on which the trial court granted summary judgment. Under Texas Rule of Civil Procedure 166a(i), the movant represents that no evidence exists as to one or more essential elements of the non-movant's claims upon which the non-movant has the burden of proof at trial. TEX.R. CIV. P. 166a(i). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.*

■ A no-evidence summary judgment is essentially a pre-trial directed verdict. *Bendigo v. City of Houston,* 178 S.W.3d 112, 113–14 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Jackson v. Fiesta Mart,* 979 S.W.2d 68, 70–71 (Tex.App.-Austin 1998, no pet.). We reverse the summary judgment if the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Bioscis., Inc.,* 124 S.W.3d 167, 172 (Tex. 2003). The non-movant need not marshal its proof; it need only point out evidence that raises a fact issue on the challenged elements. TEX.R. CIV. P. 166a(i) cmt.

■ In the interest of judicial economy, we may also consider the other grounds for summary judgment that the trial court did not rule on but the movants preserved for review. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Phillips v. Dow Chem. Co.,* 186 S.W.3d 121, 130 (Tex.App.-Houston [1st Dist.] 2005, no pet.). For those grounds urged under Rule 166a(c), summary judgment is proper only if the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense.

*Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

### The Stowers *doctrine*

 The *Stowers* doctrine shifts the risk of an excess judgment from the insured to the insurer by subjecting an insurer to liability for the wrongful refusal to settle a claim against the insured within policy limits. *Westchester Fire Ins. Co. v. Am. Contractors Ins. Co. Risk Retention Group*, 1 S.W.3d 872, 874 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *see Phillips v. Bramlett*, 288 S.W.3d 876, 879 (Tex. 2009); *Stowers*, 15 S.W.2d at 544. A settlement demand triggers an insurer's *Stowers* duty to respond if: (1) the claim against the insured is within the scope of coverage; (2) the demand is within policy limits; and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *Phillips*, 288 S.W.3d at 879 (citing *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994)); *see Westchester Fire Ins. Co.*, 1 S.W.3d at 873 ("A demand above policy limits, even though reasonable, does not trigger the *Stowers* duty to settle.").

This appeal requires resolution of whether a settlement offer triggers an insurer's duty to settle when the plaintiffs' settlement terms require funding from multiple insurers, and no single insurer can fund the settlement within the limits that apply under its particular policy—an issue that the Texas Supreme Court has expressly left unanswered. *See Am. Physicians Ins. Exchg.*, 876 S.W.2d at 849 n. 13; *see also Birmingham Fire Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 947 S.W.2d 592, 599 (Tex.App.-Texarkana 1997, writ denied) (quoting *American Physicians* in refusing to impose on primary carrier duty of care owed to excess carrier independent of primary insurer's duty to its insured; excess carrier could assert existing duty to insured through subrogation). Since *American Physicians*, the Texas Supreme Court has issued two decisions that fill in much—if not all—of the gap it recognized in that case, at least as the *Stowers* doctrine applies to Southern and Acceptance here. *See Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 776 (Tex.2007); *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 701–02 (Tex.2000).

*Mid–Continent* dealt with a dispute between one primary liability insurer, Mid–Continent, and another primary insurer, Liberty Mutual, which also provided the excess insurance policy applicable to the claim against their common insured. 236 S.W.3d at 768. Each of the primary policies provided $1 million in coverage, and the excess policy provided $10 million in coverage. *Id.* In response to a reasonable offer to settle the claim for $1.5 million, Liberty Mutual sought a proportionate contribution from Mid–Continent. Mid–Continent unreasonably valued the case at $300,000 and agreed to contribute only $150,000. *Id.* Liberty Mutual funded the rest of the $1.5 million settlement and then instituted proceedings in federal court to obtain contribution from Mid–Continent. *Id.*

On certified question from the Fifth Circuit, the supreme court rejected any right of reimbursement under *Stowers* for Liberty Mutual's payment to settle the case in excess of its policy limits. *See id.* at 776. The supreme court explained that "Mid–Continent did not breach a *Stowers* duty to [the insured] because the [claimants] did not make a settlement offer within Mid–Continent's policy limits." *Id.* While the $1.5 settlement demand in *Mid–Continent* exceeded the value of each primary policy, it came within the limits of the total pri-

mary coverage available, as well as the aggregate available under the primary and excess policies provided by Liberty Mutual. *Mid–Continent* thus stands for the proposition that, in a claim involving multiple policies, a settlement demand does not activate one primary insurer's *Stowers* duty unless the demand falls within the applicable limits available under that single policy. *See id.*

In *Keck*, the supreme court considered a dispute between an excess carrier, National, and the primary insurer, INA, in handling the settlement of a claim against their insured. 20 S.W.3d at 692. During litigation, the claimant demanded $3.6 million to settle the suit, but neither insurer expressed interest in settling for that amount. *Id.* at 695. Some time later, a day into trial, INA tendered its policy limits to National. *Id.* After two days of negotiations, National settled the suit for $7 million. *Id.*

National then sued INA and Keck, Mahin & Cain (KMC), the attorneys hired to defend the insured. *Id.* Stepping into the insured's shoes, National contended that INA's and KMC's mishandling of the claim forced National to settle it for an excessive amount. *Id.* at 695–96. Among other affirmative defenses, INA and KMC asserted contributory negligence and comparative responsibility against National, claiming that National had some responsibility for the excessive settlement because it had the opportunity to settle the case for much less under the earlier demand. *Id.* at 701.

In considering the merits of those affirmative defenses, the supreme court observed that "[a]n excess insurer owes its insured a duty to accept reasonable settlements, but that duty is also not typically invoked until the primary insurer has tendered its policy limits." *Id.* (citations omitted). The supreme court noted, "the

primary insurer did not tender its limits until the trial began, well after the $3.6 million settlement demand had been withdrawn." *Id.* The supreme court concluded that, because INA had not tendered its limits in response to that demand, National had no duty to evaluate or respond to it. *Id.* *Keck* makes plain that the *Stowers* duty does not arise for an excess insurer until the primary carrier has tendered its limits.

. Our court, too, has addressed this *Stowers* issue in past decisions. In *Westchester Fire Insurance Co.*, we considered whether an excess insurer is entitled to equitable subrogation against a primary insurer for breach of its *Stowers* duty when the initial settlement demand exceeded the limits of the primary policy. 1 S.W.3d at 873. We declined to find the *Stowers* duty triggered under those circumstances because the plaintiffs never made a demand within American's policy limits. *Id.* at 874; *see also West Oaks Hosp., Inc. v. Jones*, No. 01–98–00879–CV, 2001 WL 83528, at *10 (Tex.App.-Houston [1st Dist.] Feb. 1, 2001, pet. denied) (not designated for publication) (concluding that hospital insurers did not violate their *Stowers* duty where lowest settlement demand was $725,000, while primary insurance coverage was $500,000, and declining to expand *Stowers* doctrine by recognizing duty where settlement demand fell within aggregate amount of coverage provided by available layers of coverage).

None of the Texas cases addressing the *Stowers* doctrine since these decisions cause us to doubt their holdings. AFTCO and ETSI ask us to decline to follow *Westchester* and to reverse the trial court's ruling based on the reasoning set forth in *Yorkshire Insurance Co. v. Seger*, 279 S.W.3d 755 (Tex.App.-Amarillo 2007, pet. denied). *Yorkshire*, however, involved a different kind of insurance arrangement

than the one in this case: there, the corporate personal injury defendant held a single "Lloyd's-of London-type" comprehensive general liability (CGL) policy with a single policy limit, issued by a group of underwriters. *See id.* at 760. *Stowers* looks to whether the plaintiffs have made a demand within the limits of a single policy, not on a single insurer. The factual differences between *Yorkshire* and this case render *Yorkshire* inapplicable.

### The Stowers *claim against Southern*

■ We now apply these general *Stowers* principles to the primary and the excess policies involved in this case. With respect to the primary policy, AFTCO and ETSI contend that Southern had a duty under *Stowers* to promptly respond to the plaintiffs' settlement offers. AFTCO and ETSI urge that we consider the plaintiffs' global settlement offer "to fully relinquish and waive any uninsured claim that they have against [AFTCO, ETSI, V.C. Enterprises, Gonzales, and the driver], in return for a tender of the policy limits available under the insurance policies" as an offer within policy limits that triggered Southern's *Stowers* duty. The phrasing of the demand, however, is unambiguously directed toward multiple policies and all of the insurers together, in exchange for a release from multiple plaintiffs. In their settlement demand, the Louisiana plaintiffs did not offer to release their claims against those insured under a particular policy in exchange for the limits available under that policy, and we decline to read it that way. The settlement demand also referred to a $2.6 million sum certain, which was an aggregate of multiple poli-

cies and an amount that exceeded the Southern policy's limits. *See Mid–Continent Ins. Co.*, 236 S.W.3d at 776.[2] The trial court thus correctly granted summary judgment in favor of Southern.

### The Stowers *claim against Acceptance*

■ With respect to the excess policy, AFTCO and ETSI contend that the trial court's refusal to apply *Stowers* means that any time a personal injury plaintiff seeks damages in excess of the primary insurance limits, the primary insurer would have no duty to tender policy limits unless the plaintiff has made a separate settlement offer to the primary insurer that reserved his rights against the excess insurer. *Keck* forecloses an alternative application. *See* 20 S.W.3d at 701. As an excess policy carrier that named ETSI as an additional insured, Acceptance's *Stowers* duty could arise only after the primary carrier (1) received a settlement demand within the primary policy's limits and (2) in acting as an ordinarily prudent insurer, discharged its *Stowers* duty by tendering the limits of that policy. *See id.; Emscor Mfg., Inc. v. Alliance Ins. Group*, 879 S.W.2d 894, 903 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *see also Mid–Continent Ins. Co.*, 236 S.W.3d at 776 (holding that one of two primary insurers who refused to contribute proportionate part of settlement did not owe *Stowers* duty to insured because claimants did not make settlement offer within policy limits, precluding other primary insurer's attempt to assert such right to recoup excess settlement payment by way of subrogation); *Westchester Fire Ins. Co.*, 1 S.W.3d at 874

---

**2.** To the extent that AFTCO and ETSI base their *Stowers* claim on Southern's alleged failure to inform Acceptance of its willingness to tender the primary policy limits in response to the plaintiffs' demand, the trial court correctly rejected that ground as well. The *Stowers* duty does not extend beyond the obligation

to respond reasonably to an offer to settle a covered claim within an insured's policy limits. *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex.1994); *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 97 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

(declining to recognize exception to *Stowers* that would impose duty when demand exceeds policy limits). AFTCO and ETSI attempt to distinguish *Keck* on its facts, pointing out that the dispute in that case was between the excess carrier and the primary carrier, not the insurer and the insured. The carrier there, however, sought relief under an equitable subrogation theory, and thus it was entitled to the same rights that were available to its insured. *See Keck*, 20 S.W.3d at 700–01.

In this case, the predicate acts identified in *Keck* to advance a *Stowers* claim against an excess carrier did not occur because the primary carrier never tendered its policy limits. We therefore hold that the trial court correctly granted summary judgment on the no-evidence ground urged by Acceptance.

### Conclusion

The trial court correctly granted summary judgment in favor of Southern and Acceptance on the ground that the plaintiffs' settlement demands never triggered their *Stowers* duties. We therefore affirm the judgment of the trial court.