Opinion issued May 13, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00280-CV

———————————

AFTCO Enterprises, Inc. and ETSI, Inc.,
Appellants

V.

Acceptance Indemnity Insurance Company and 

Southern
County Mutual Insurance Company, Appellees



 



 

On Appeal from the 80th District Court

Harris County, Texas



Trial Court Case No. 2007-50497

 



O P I N I O N

AFTCO Enterprises,
Inc. (AFTCO) and ETSI, Inc. brought Stowers
actions against their insurers, Acceptance Indemnity Insurance Company
(Acceptance) and Southern County Mutual Insurance Company (Southern),
complaining that Acceptance and Southern each failed to timely tender its
policy limits in response to a $2.6 million global offer to settle four
personal injury lawsuits then pending in Louisiana state court that arose out
of a highway accident.  See G.A. Stowers Furniture Co. v. Am. Indem.
Co., 15 S.W.2d 544, 547 (Tex. Comm’n App. 1929, holding approved).  Though their carriers ultimately tendered
their respective policy limits to satisfy the underlying liability claims,
AFTCO and ETSI seek unspecified attorney’s fees and compensation for damage to
their business reputations for the carriers’ delay in settling the case.  AFTCO and ETSI appeal the trial court’s grant
of the insurers’ summary judgment motions. 
They contend that the trial court erred in concluding the settlement
offer, as a matter of law, did not trigger a Stowers duty for either insurer. 
Finding no error, we affirm.  

Background

This insurance dispute arose out of
a 2003 accident, in which an eighteen-wheel tractor-trailer rig collided with
several passenger vehicles stopped at a highway intersection in Lafayette,
Louisiana.  As a result of the collision,
two people died and nine were injured.  At
the time of the collision, the rig’s driver was working for ETSI under a
contract between it and counterparties V.C. Enterprises, Inc. and Francisco
Gonzales, the tractor owners. 
Performance Rental, I.C., had rented the trailer to AFTCO.  The following insurance policies were in
effect when the accident occurred: 

·       
a primary policy issued by Home State Insurance
Company (Home State) with remaining limits of $600,000,[1] which named AFTCO as the
insured and ETSI as an additional insured; 

·       
a $1 million primary policy issued by Southern,
which named Performance as the insured and AFTCO, ETSI, and the rig driver as additional
insureds;

·       
a $1 million excess policy issued by Acceptance, which
named AFTCO as the insured and ETSI as an additional insured, and

·       
a $10 million excess policy issued by Harco National
Insurance Company (Harco), which does not exclude coverage for exemplary
damages.

Louisiana state court proceedings

The personal injury lawsuits
stemming from the collision and the corresponding insurance and coverage disputes
proceeded together in Louisiana state court. 
Harco maintained that its excess policy provided no coverage for losses
arising out of the accident, while the personal injury plaintiffs and AFTCO and
ETSI maintained that Harco owed coverage. 
In June 2006, the remaining personal injury plaintiffs sent a letter to
all of the insurance companies, except Harco, in which they offered to settle
their claims against V.C. Enterprises, Gonzalez, the driver, AFTCO, Home State,
Southern, and Acceptance, as well as any uninsured claims against those
defendants, “in exchange for a tender of the policy limits available under the
insurance policies issued by [Home State, Acceptance, and Southern].”  Their offer also stated, “We understand the
insurance policies issued by Home State, Acceptance, and Southern, at this time
provide insurance coverage of $2,687,433.70 for the claims of the remaining
plaintiffs.”  The plaintiffs reserved
their rights to proceed against Harco.

Southern did not respond to the plaintiffs’
letter.  Acceptance responded in a letter
to plaintiffs’ counsel that it had “no obligation to consider payment of a
demand under its policy, assuming coverage would exist, unless and until the
liability limits of all underlying policies are exhausted.”  

In November 2006, the Louisiana
Supreme Court ruled on the Harco coverage dispute, holding that whether the
Harco policy provided coverage depended on resolution of a fact issue.  The plaintiffs then sent another letter to
the insurers, this time including Harco, in which they made “formal demand for
the limits of all insurance policies (i.e., $13 million minus amounts already
paid out in this matter)” in exchange for their release of all claims,
including excess claims, against all of the defendants.

In response, Acceptance stated its
willingness to mediate the litigation, conditioned on the participation of the
other three insurance companies.  By the
end of April 2007, mediation still had not occurred, but Southern had unilaterally
formally tendered its policy limits to settle the case.  Within several days of that settlement
proposal, Acceptance tendered its policy limits, reserving its right to seek
contribution against Harco, which still refused to provide coverage.

As a result of Harco’s continued
refusal to settle, the personal injury claims went to trial, which resulted in
a jury verdict and judgment in excess of $20 million.  The August 2007 judgment also declared that
the Harco policy provided coverage for the claims.  After the entry of that judgment, the
insurers settled all of the outstanding claims for the available policy limits,
thus resolving AFTCO and ETSI’s liability in the underlying case.  

Trial court proceedings

AFTCO and ETSI instituted this suit
in Texas state court, claiming, among other things, that the insurers
negligently violated their Stowers
duty to accept reasonable settlement offers within policy limits, which caused AFTCO
and ETSI to incur additional attorney’s fees and expenses that they would not
have incurred but for the insurers’ alleged negligence.  Acceptance moved for summary judgment on the
grounds that (1) there is no evidence that the underlying events ever triggered
its Stowers duty; (2) as a matter of
law, it had a reasonable, good faith basis for refusing to pay the plaintiffs’
settlement demands; and (3) its conduct did not cause any damages to AFTCO or
ETSI as a matter of law because it tendered the policy limits before the personal
injury claims went to trial.  The trial
court’s order specifies that it granted summary judgment solely on the
no-evidence ground urged by Acceptance—that there was no evidence that any Stowers obligations were ever triggered.

Southern also moved for summary
judgment on traditional and no-evidence grounds, both of which stemmed from the
absence of any circumstance triggering its Stowers
duty.  At the hearing on Southern’s
motion, AFTCO, ETSI, and Acceptance all agreed that the trial court should decide
the summary judgment motion “on the issue of whether a joint settlement demand
that is made above the limits of Southern[’s] insurance policy, but within the
combined limits of separate insurance policies that provided coverage for
underlying claims, makes [Southern] subject to a Stowers claim.”  The trial
court determined that Southern “is not subject to a Stowers claim on the facts of this case,” and, based on that
determination, granted a take-nothing summary judgment.  AFTCO and ETSI appeal these rulings.  

Discussion

Standard of review

We review a trial court’s summary
judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d  656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211,
215 (Tex. 2003).  Both of the summary
judgment orders challenged in this appeal specify the no-evidence grounds on
which the trial court granted summary judgment. 
Under Texas Rule of Civil Procedure 166a(i), the movant represents that
no evidence exists as to one or more essential elements of the non-movant’s
claims upon which the non-movant has the burden of proof at trial.  Tex.
R. Civ. P. 166a(i).  The trial
court must grant the motion unless the nonmovant produces summary judgment evidence
raising a genuine issue of material fact. 
Id.  

A no-evidence summary judgment is
essentially a pre-trial directed verdict. 
Bendigo v. City of Houston,
178 S.W.3d 112, 113–14 (Tex. App.—Houston [1st Dist.] 2005, no pet.); Jackson v. Fiesta Mart, 979 S.W.2d 68,
70–71 (Tex. App.—Austin 1998, no pet.). 
We reverse the summary judgment if the evidence “would allow reasonable
and fair-minded people to differ in their conclusions.”  Forbes Inc. v. Granada Bioscis., Inc.,
124 S.W.3d 167, 172 (Tex.
2003).  The non-movant need not marshal
its proof; it need only point out evidence that raises a fact issue on the
challenged elements.  Tex. R. Civ. P. 166a(i) cmt.

In the interest of judicial
economy, we may also consider the other grounds for summary judgment that the
trial court did not rule on but the movants preserved for review.  Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996); Phillips v. Dow Chem. Co., 186 S.W.3d
121, 130 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  For those grounds urged under Rule 166a(c),
summary judgment is proper only if the movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a
matter of law.  Tex. R. Civ. P. 166a(c). The motion must state the specific
grounds relied upon for summary judgment. 
Id.  A defendant moving for
traditional summary judgment must conclusively negate at least one essential
element of each of the plaintiff’s causes of action or conclusively establish
each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

The Stowers doctrine

The Stowers doctrine shifts the risk of an excess judgment from the
insured to the insurer by subjecting an insurer to liability for the wrongful
refusal to settle a claim against the insured within policy limits.  Westchester
Fire Ins. Co. v. Am. Contractors Ins. Co. Risk Retention Group, 1 S.W.3d
872, 874 (Tex. App.—Houston [1st Dist.] 1999, no pet.); see Phillips v. Bramlett, 288 S.W.3d 876, 879 (Tex. 2009); Stowers, 15 S.W.2d at 544.  A settlement demand triggers an insurer’s Stowers duty to respond if: (1) the claim
against the insured is within the scope of coverage; (2) the demand is within
policy limits; and (3) the terms of the demand are such that an ordinarily
prudent insurer would accept it, considering the likelihood and degree of the
insured’s potential exposure to an excess judgment.  Phillips,
288 S.W.3d at 879 (citing Am. Physicians
Ins. Exch. v. Garcia, 876 S.W.2d 842, 849 (Tex. 1994)); see Westchester Fire Ins. Co., 1 S.W.3d
at 873 (“A demand above policy limits, even though reasonable, does not trigger
the Stowers duty to settle.”).  

This appeal requires resolution of
whether a settlement offer triggers an insurer’s duty to settle when the plaintiffs’
settlement terms require funding from multiple insurers, and no single insurer
can fund the settlement within the limits that apply under its particular
policy—an issue that the Texas Supreme Court has expressly left
unanswered.  See Am. Physicians Ins.
Exchg., 876 S.W.2d at 849 n.13; see
also Birmingham Fire Ins. Co. v. Am. Nat’l Fire Ins. Co., 947 S.W.2d 592,
599 (Tex. App.—Texarkana 1997, writ denied) (quoting American Physicians in refusing to impose on primary carrier duty
of care owed to excess carrier independent of primary insurer’s duty to its
insured; excess carrier could assert existing duty to insured through subrogation).  Since American
Physicians, the Texas Supreme Court has issued two decisions that fill in
much—if not all—of the gap it recognized in that case, at least
as the Stowers doctrine applies to
Southern and Acceptance here.  See Mid-Continent Ins. Co. v. Liberty Mut.
Ins. Co., 236 S.W.3d 765, 776 (Tex. 2007); Keck, Mahin & Cate v. Nat’l Union Fire Ins. Co., 20 S.W.3d 692,
701–02 (Tex. 2000). 

Mid-Continent dealt with
a dispute between one primary liability insurer, Mid-Continent, and another
primary insurer, Liberty Mutual, which also provided the excess insurance
policy applicable to the claim against their common insured.  236 S.W.3d at 768.  Each of the primary policies provided $1
million in coverage, and the excess policy provided $10 million in
coverage.  Id.  In response to a
reasonable offer to settle the claim for $1.5 million, Liberty Mutual sought a
proportionate contribution from Mid-Continent. 
Mid-Continent unreasonably valued the case at $300,000 and agreed to
contribute only $150,000.  Id. 
Liberty Mutual funded the rest of the $1.5 million settlement and then instituted
proceedings in federal court to obtain contribution from Mid-Continent.  Id.  

On certified question from the
Fifth Circuit, the supreme court rejected any right of reimbursement under Stowers for Liberty Mutual’s payment to
settle the case in excess of its policy limits. 
See id. at 776.  The supreme court explained that “Mid-Continent
did not breach a Stowers duty to [the
insured] because the [claimants] did not make a settlement offer within
Mid-Continent’s policy limits.”  Id.  While the $1.5 settlement demand in Mid-Continent exceeded the value of each
primary policy, it came within the limits of the total primary coverage available,
as well as the aggregate available under the primary and excess policies
provided by Liberty Mutual.  Mid-Continent thus stands for the
proposition that, in a claim involving multiple policies, a settlement demand
does not activate one primary insurer’s Stowers
duty unless the demand falls within the applicable limits available under that
single policy.  See id.

In Keck, the supreme court considered a dispute between an excess
carrier, National, and the primary insurer, INA, in handling the settlement of
a claim against their insured.  20 S.W.3d
at 692.  During litigation, the claimant
demanded $3.6 million to settle the suit, but neither insurer expressed
interest in settling for that amount.  Id. at 695.  Some time later, a day into trial, INA
tendered its policy limits to National.  Id.  After two days of negotiations, National
settled the suit for $7 million.  Id. 

National then sued INA and Keck,
Mahin & Cain (KMC), the attorneys hired to defend the insured.  Id.  Stepping into the insured’s shoes, National
contended that INA’s and KMC’s mishandling of the claim forced National to
settle it for an excessive amount.  Id. at 695–96.  Among other affirmative defenses, INA and KMC
asserted contributory negligence and comparative responsibility against
National, claiming that National had some responsibility for the excessive
settlement because it had the opportunity to settle the case for much less
under the earlier demand.  Id. at 701.  

In considering the merits of those
affirmative defenses, the supreme court observed that “[a]n excess insurer owes
its insured a duty to accept reasonable settlements, but that duty is also not
typically invoked until the primary insurer has tendered its policy limits.”  Id.
(citations omitted).  The supreme court
noted, “the primary insurer did not tender its limits until the trial began,
well after the $3.6 million settlement demand had been withdrawn.”  Id.
 The supreme court concluded that,
because INA had not tendered its limits in response to that demand, National
had no duty to evaluate or respond to it. 
Id.  Keck
makes plain that the Stowers duty does
not arise for an excess insurer until the primary carrier has tendered its
limits.  

Our court, too, has addressed this Stowers issue in past decisions.  In Westchester
Fire Insurance Co., we considered whether an excess insurer is entitled to
equitable subrogation against a primary insurer for breach of its Stowers duty when the initial settlement
demand exceeded the limits of the primary policy.  1 S.W.3d at 873.  We declined to find the Stowers duty triggered under those circumstances because the
plaintiffs never made a demand within American’s policy limits.  Id.
at 874; see also West Oaks Hosp., Inc. v.
Jones, No. 01-98-00879-CV, 2001 WL 83528, at *10 (Tex. App.—Houston [1st
Dist.] Feb. 1, 2001, pet. denied) (not designated for publication) (concluding
that hospital insurers did not violate their Stowers duty where lowest settlement demand was $725,000, while
primary insurance coverage was $500,000, and declining to expand Stowers doctrine by recognizing duty
where settlement demand fell within aggregate amount of coverage provided by available
layers of coverage).

None of the Texas cases addressing
the Stowers doctrine since these
decisions cause us to doubt their holdings. 
AFTCO and ETSI ask us to decline to follow Westchester and to reverse the trial court’s ruling based on the
reasoning set forth in Yorkshire
Insurance Co. v. Seger, 279 S.W.3d 755 (Tex. App.—Amarillo 2007, pet.
denied).  Yorkshire, however, involved a different kind of insurance
arrangement than the one in this case: there, the corporate personal injury
defendant held a single “Lloyd’s-of London-type” comprehensive general
liability (CGL) policy with a single policy limit, issued by a group of
underwriters.  See id. at 760.  Stowers looks to whether the plaintiffs
have made a demand within the limits of a single policy, not on a single
insurer.  The factual differences between
Yorkshire and this case render Yorkshire inapplicable.  

The Stowers claim against Southern

We now apply these general Stowers principles to the primary and
the excess policies involved in this case. 
With respect to the primary policy, AFTCO and ETSI contend that Southern
had a duty under Stowers to promptly
respond to the plaintiffs’ settlement offers. 
AFTCO and ETSI urge that we consider the plaintiffs’ global settlement
offer “to fully relinquish and waive any uninsured claim that they have against
[AFTCO, ETSI, V.C. Enterprises, Gonzales, and the driver], in return for a
tender of the policy limits available under the insurance policies” as an offer
within policy limits that triggered Southern’s Stowers duty.  The phrasing
of the demand, however, is unambiguously directed toward multiple policies and all
of the insurers together, in exchange for a release from multiple plaintiffs.  In their settlement demand, the Louisiana plaintiffs
did not offer to release their claims against those insured under a particular
policy in exchange for the limits available under that policy, and we decline
to read it that way.  The settlement demand
also referred to a $2.6 million sum certain, which was an aggregate of multiple
policies and an amount that exceeded the Southern policy’s limits.  See Mid-Continent
Ins. Co., 236 S.W.3d at 776.[2]  The trial court thus correctly granted
summary judgment in favor of Southern.

The Stowers claim against Acceptance

With respect to the excess policy, AFTCO
and ETSI contend that the trial court’s refusal to apply Stowers means that any time a personal injury plaintiff seeks
damages in excess of the primary insurance limits, the primary insurer would
have no duty to tender policy limits unless the plaintiff has made a separate
settlement offer to the primary insurer that reserved his rights against the
excess insurer.  Keck forecloses an alternative application.  See
20 S.W.3d at 701.  As an excess policy carrier
that named ETSI as an additional insured, Acceptance’s Stowers duty could arise only after the primary carrier (1)
received a settlement demand within the primary policy’s limits and (2) in acting
as an ordinarily prudent insurer, discharged its Stowers duty by tendering the limits of that policy.  See
id.; Emscor Mfg., Inc. v. Alliance Ins. Group, 879 S.W.2d 894, 903 (Tex.
App.—Houston [14th Dist.] 1994, writ denied); see also Mid-Continent Ins. Co., 236 S.W.3d at 776 (holding that
one of two primary insurers who refused to contribute proportionate part of
settlement did not owe Stowers duty
to insured because claimants did not make settlement offer within policy
limits, precluding other primary insurer’s attempt to assert such right to
recoup excess settlement payment by way of subrogation); Westchester Fire Ins. Co., 1 S.W.3d at 874 (declining to recognize
exception to Stowers that would impose
duty when demand exceeds policy limits).  AFTCO and ETSI attempt to distinguish Keck on its facts, pointing out that the
dispute in that case was between the excess carrier and the primary carrier,
not the insurer and the insured.  The carrier
there, however, sought relief under an equitable subrogation theory, and thus
it was entitled to the same rights that were available to its insured.  See
Keck, 20 S.W.3d at 700–01.  

In this case, the predicate acts identified
in Keck to advance a Stowers claim against an excess carrier did
not occur because the primary carrier never tendered its policy limits.  We therefore hold that the trial court
correctly granted summary judgment on the no-evidence ground urged by
Acceptance.




 

Conclusion

The trial court correctly granted
summary judgment in favor of Southern and Acceptance on the ground that the
plaintiffs’ settlement demands never triggered their Stowers duties.  We therefore
affirm the judgment of the trial court.

 

 

                                                          Jane
Bland

                                                          Justice

 

 

Panel consists
of Justices Jennings, Hanks, and Bland.

 











[1]               Home State had already paid out $400,000 of the $1 million coverage
available in the settlement of other claims arising out of the accident.

 





[2]               To the extent that AFTCO and
ETSI base their Stowers claim on
Southern’s alleged failure to inform Acceptance of its willingness to tender
the primary policy limits in response to the plaintiffs’ demand, the trial
court correctly rejected that ground as well. 
The Stowers duty does not
extend beyond the obligation to respond reasonably to an offer to settle a
covered claim within an insured’s policy limits.  Am.
Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 849 (Tex. 1994); Wayne Duddlesten, Inc. v. Highland Ins. Co., 110 S.W.3d 85, 97 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied).